**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| KUEI JUNG LI, Individually and on Behalf of All Others Similarly Situated, | ) | Case No. 1:15-CV-373 |
| Plaintiff, | ) | |
| v. | ) | |
| DOUGLAS H. BOWERS, SUSAN G. CASEY, PAUL R. BURKE, NORMAN P. CREIGHTON, WILLIAM F. GRANT III, DANIEL R. MATHIS, ROBERT S. MUEHLENBECK, JOHN T. PIETRZAK, SETH RUDNICK, ROBERT H. SCOTT, W. KIRK WYCOFF, ROBERT I. USDAN, SQUARE 1 FINANCIAL, INC. and PACWEST BANCORP, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS AND APPROVAL OF ATTORNEYS' FEES**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ... 2

THE SETTLEMENT ... 4

ARGUMENT ... 5

I. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ... 5

A. Standard of Review ... 5

B. Class Certification Should Be Granted For Settlement Purposes Under Rule 23 .. 6

C. The Proposed Class Here Satisfies the Criteria of Rule 23(a) ... 7

1. Numerosity ... 7

2. Commonality ... 8

3. Typicality ... 9

4. Adequacy of Representation ... 9

D. The Proposed Class Satisfies the Criteria of Rule 23(b) ... 11

II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, MERITING THIS COURT's APPROVAL ... 13

A. Fairness Determination ... 14

1. The Posture of the Case and the Extent of Discovery ... 14

2. The Circumstances Surrounding the Negotiations ... 15

3. Proposed Lead Counsel Has Extensive Experience in the Area of Securities Class Action Litigation ... 16

B. Adequacy Determination ... 17

1. The Settlement is "Adequate" Under the First Three *Jiffy Lube* Factors. 17

a. Disclosure Claims ... 19

2. There Are No Solvency Issues ... 20

3. The Lack of Opposition to the Settlement ... 20

III. PLAINTIFF'S COUNSEL'S REQUEST FOR THE FEE AND EXPENSE AWARD SHOULD BE GRANTED ........ 21

A. The Requested Fee is Reasonable Under the Lodestar Analysis ........ 22

1. The Time and Labor Expended, Awards in Similar Cases, and Customary Fee For Similar Work ........ 23

2. The Novelty and Difficulty of Questions Raised By the Litigation ........ 25

3. The Skill Required to Perform the Legal Services ........ 26

4. The Opportunity Costs Due to Acceptance of the Case ........ 26

5. The Attorney's Expectation At the Out-Set of the Litigation and the "Undesirability" of the Action ........ 27

6. Time Limitation Imposed by Client or Circumstances ........ 28

7. The Results Obtained ........ 28

8. The Experience, Reputation and Ability of the Attorneys ........ 30

9. The Nature of the Professional Relationship With The Client ........ 31

IV. CONCLUSION ........ 32

## TABLE OF AUTHORITIES

**Cases**


*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69 (2d Cir. 1995) ........ 29

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........ 6

*Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978) ........ 22

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) ........ 22

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ........ 9

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) ........ 8

*Chrysler Corp. v. Dann*, 223 A.2d 384 (Del. 1966) ........ 27

*Compare Globis Capital Partners v. Safenet*, No. 2772-VCS, 2007 Del. Ch. LEXIS 237 (Del. Ch. Dec. 20, 2007) ........ 24

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........ 6

*County of York Employees Retirement Plan v. Merrill Lynch*, C.A. No. 4066-VCN (Del. Ch. Aug. 31, 2009) ........ 24

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967) ........ 8

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) ........ 7,12

*Dragon v. Perelman*, C.A. No. 15101 (Del. Ch. Aug. 29, 1997) ........ 24

*Franklin Balance Sheet Inv. Fund v. Crowley*, No. 888-VCP, 2007 Del. Ch. LEXIS 133 (Del. Ch. Aug. 30, 2007) ........ 24, 27

*Gilmartin v. Adobe Res. Corp.*, No. 12467, 1992 Del. Ch. LEXIS 80 (Del. Ch. April 6, 1992) ........ 18

*Globis Capital Partners v. Safenet*,
No. 2772-VCS (Del. Ch. Dec. 20, 2007) .......... 27

*Grissom v. The Mills Corp.*,
549 F.3d 313 (4th Cir. 2008) .......... 22

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .......... 8

*Hall v. Cole*,
412 U.S. 1 (1973) .......... 28

*Henkel v. Battista*,
No. 3419-VCN, 2008 Del. Ch. LEXIS 292 (Del. Ch. Dec. 16, 2008) .......... 24

*In re A.H. Robins Co., Inc.*,
880 F.2d 709 (4th Cir. 1989) .......... 6

*In re Bluegreen Corp. S'holder Litig.*,
C.A. No. 502011CA01811 (Cir. Ct. Palm Beach Cty., FL) .......... 10

*In re Celera Corp. S'holder Litig.*,
59 A.3d 418 (Del. 2012) .......... 12

*In re Digex, Inc. S'holder Litig.*,
No. 18336 (Del. Ch. Apr. 6, 2001) .......... 24

*In re Emerging Commc'ns, Inc. S'holder Litig.*,
No. 16415, 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) .......... 30

*In re Infinity Broad. Corp. S'holders Litig.*,
802 A.2d 285 (Del. 2002) .......... 29

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) .......... passim

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976) .......... 30

*In re Lin Broadcasting Corp. S'holders Litig.*,
No. 14039, 1995 Del. Ch. LEXIS 167 (Del. Ch. Sept. 15, 1995) .......... 24

*In re Microstrategy, Inc. Sec. Litig.*,
150 F. Supp. 2d 896 (E.D. Va. 2001) .......... 21

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) .......... passim

*In re NCS Healthcare, Inc. S'holders Litig.*, No. 19786, 2003 Del. Ch. LEXIS 56 (Del. Ch. May 28, 2003) .......... 24

*In re Netsmart Tech., Inc. S'holders Litig.,* 924 A.2d 171 (Del. Ch. 2007) .......... 19, 29

*In re Plains Res. Inc. S'holders Litig.*,
No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) .......... 27

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .......... 10

*In re Red Hat, Inc. Sec. Litig.*,
No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619 (E.D.N.C. June 11, 2010) .......... 16, 17

*In re Staples, Inc. S'holders Litig.*,
792 A.2d 934 (Del. Ch. 2001) .......... 19, 25

*In re Talley Indus., Inc. S'holders Litig.,*
No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998) .......... 19

*In re The Topps Co. S'holders Litig.*,
924 A.2d 951 (Del. Ch. 2007) .......... 28

*In re The Trizetto Group, Inc. S'holders Litig.*,
No. 3694-VCN (Del. Ch. Dec. 4, 2008) .......... 25

*In re Vitalink Commc'ns Corp. S'holders Litig.*,
No. 12085, 1991 Del. Ch. LEXIS 195 (Del. Ch. Nov. 8, 1991) .......... 27

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .......... 23

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .......... 22

*Kelley v. Norfolk & W. Ry. Co.*,
584 F.2d 34 (4th Cir. 1978) .......... 7

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) .......... 9

*Knight v. Lavine*,
No. 1:12-cv-611, 2013 U.S. Dist. LEXIS 14855 (E.D. Va. Feb. 4, 2013) .......... 12

*La. Mun. Police Emps.' Ret. Sys. v. Crawford*, No. 2635 (Del. Ch. June 8, 2007) ...................... 24

*Lienhart v. Dryvit Sys., Inc.*,
255 F.3d 138 (4th Cir. 2001) ........................................................................................... 9

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
No. 1:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009)..... 6, 13

*MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*,
501 A.2d 1239 (Del. Ch. 1985)......................................................................................... 17

*McLaurin v. Prestage Foods, Inc.*,
271 F.R.D. 465 (E.D.N.C. 2010) ...................................................................................... 11

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)............................................................................................................ 4

*Montague v. Dixie Nat'l Life Ins. Co.*,
No. 3:09-687-JFA, 2010 U.S. Dist. LEXIS 111362 (D.S.C. Oct. 19, 2010)............................. 7

*Muhammad v. Nat'l City Mortg., Inc.*,
No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534 (S.D. W. Va. Dec. 19, 2008) ........ 6, 14, 15, 21

*Paramount Commc'ns, Inc. v. QVC Network, Inc.*,
637 A.2d 34 (Del. 1994) ................................................................................................... 18

*Robinson v. Equifax Info. Servs., LLC*,
560 F.3d 235 (4th Cir. 2009) ........................................................................................... 22

*Rucker v. McNair*,
No. 5:95-CV-1054-BO(2), 1997 U.S. Dist. LEXIS 22036 (E.D.N.C. Dec. 7, 1997)......... 22, 28

*Ryan v. Gifford*,
No. 2213-CC, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009)............................................... 29

*S.C. Nat'l Bank v. Stone*,
139 F.R.D. 325 (D.S.C. 1991) ............................................................................................ 9

*Seinfeld v. Coker*,
847 A.2d 330 (Del. Ch. 2000)........................................................................................... 27

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) .................................................................................... 21

*Stroud v. Grace*,
606 A.2d 75 (Del. 1992) ................................................................................................... 18

*Tandycrafts, Inc. v. Initio Partners*,
562 A.2d 1162 (Del. 1989) .......... 28

*Tatum v. R.J. Reynolds Tobacco Co.*,
254 F.R.D. 59 (M.D.N.C. 2008) .......... 12

*Teague v. Bakker*,
213 F. Supp. 2d 571 (W.D.N.C. 2002) .......... 22

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) .......... 8

*Ticor Title Ins. Co. v. Brown*,
511 U.S. 117 (1994) .......... 12

*Turner v. Bernstein*,
768 A.2d 24 (Del. Ch. 2000) .......... 12

*Virgin Islands Gov't Employees' Ret. Sys. v. Alvarez*,
No. 3976-VCS, 2008 Del. Ch. LEXIS 291 (Del. Ch. Dec. 2, 2008) .......... 25

*Wal–Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 20

*Wayne Cnty. Emps.' Ret. Sys. v. Corti*,
954 A.2d 319 (Del. Ch. 2008) .......... 18

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) .......... 15

*Zimmerman v. Bell*,
800 F.2d 386 (4th Cir. 1986) .......... 7

**Statutes**

Securities Exchange Act of 1934 Section 14(a) ........ 2

**Other Authorities**

*Charles Ann Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure*: Civil § 1784.1 (3d ed. 2005) ........ 12

*Newberg on Class Actions* § 11.28 at 1159 (3d ed. 1992) ........ 16

**Rules**

Fed. R. Civ. P. Rules 23 ........ passim

## PRELIMINARY STATEMENT

Plaintiff Kuei Jung Li ("Plaintiff"), by Schiller & Schiller, P.L.L.C. ("Schiller & Schiller") and Levi & Korsinsky LLP ("Levi Korsinsky" and, collectively with Schiller & Schiller, "Plaintiff's Counsel"), on behalf of himself and the other members of the proposed Settlement Class (as hereinafter defined), respectfully submits this brief in support of his application for: (1) certification of a class in connection with the proposed settlement (the "Settlement") of this action (the "Action"); (2) approval of the Settlement, pursuant to the Stipulation of Settlement, dated December 4, 2015 and filed with the Court on December 24, 2015 (the "Stipulation")[1]; and (3) an award of attorneys' fees and expenses in the aggregate of $300,000 for the services Plaintiff's counsel rendered in the successful prosecution and settlement of the Action ("Fee and Expense Award"). The Settlement provides for a valuable result to all public stockholders of Square 1 Financial, Inc. ("Square 1" or the "Company") and for more complete information that allowed them to make a fully-informed decision on the merits of the merger between Square 1 and PacWest Bancorp ("PacWest").

For the reasons set forth below, Plaintiff respectfully requests that the Court certify the Class (as defined herein) in connection with the proposed Settlement, grant final approval of the Settlement, and approve the proposed Fee and Expense Award for services performed by Plaintiff's counsel.

---

[1] The Stipulation is attached as Exhibit A to the Declaration of Shannon L. Hopkins in Support of Plaintiff's Unopposed Motion for Preliminary Approval, Preliminary Certification of the Settlement Class, and Approval of Notice to the Settlement Class, filed on December 24, 2015 (ECF No. 13-1).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 2, 2015, Square 1 and PacWest announced an agreement by which Square 1 would merge with and into PacWest, with PacWest continuing as the surviving corporation (the "Agreement," and the merger to be effected thereby, the "Transaction");

On May 7, 2015, Plaintiff Li filed this Action alleging, among other things, (i) on behalf of an alleged class of Square 1 stockholders that the Individual Defendants[2] breached their fiduciary duties to Square 1's stockholders by entering into the Agreement and by making inadequate disclosures with respect to the Agreement and the Transaction in the April 22, 2015 Form S-4 Registration Statement ("S-4"), and that Square 1 and PacWest aided and abetted the Individual Defendants' alleged breaches of fiduciary duty, and (ii) on behalf of Plaintiff individually, that defendants violated Section 14(a) of the Securities Exchange Act of 1934 and related regulations (and that the Individual Defendants violated Section 20(a) of the Securities Exchange Act of 1934) by making materially incomplete or misleading disclosures in the S-4.

On May 12, 2015, having reviewed the public filings related to the Transaction, and in consultation with their financial expert, Plaintiff's counsel sent a written settlement demand to Defendants.

PacWest filed with the SEC further amended registration statements on Form S-4/A on May 20, 2015; June 8, 2015; and June 19, 2015, which included, among other things, various disclosures concerning the Transaction (with the April 22, 2015, S-4, the "Preliminary Proxy Statements").

---

[2] The "Individual Defendants" are the former members of the Square 1 Board of Directors (the "Board"): Douglas H. Bowers, Susan G. Casey, Paul R. Burke, Norman P. Creighton, William F. Grant III, Daniel R. Mathis, Robert S. Muehlenbeck, John T. Pietrzak, Seth Rudnick, Robert H. Scott, W. Kirk Wycoff, and Robert I. Usdan.

Following arms'-length discussions and negotiations among counsel for the Parties concerning the potential resolution of the Action, including the negotiation of various supplemental disclosures (the "Supplemental Disclosures") to Square 1 stockholders that Plaintiff and his counsel requested be made, the parties entered into a Memorandum of Understanding ("MOU") on June 1, 2015 setting forth their agreement in principle to settle the Actions on the terms set forth in this Stipulation.

On June 23, 2015, Square 1 filed with the SEC a definitive proxy statement on Schedule 14A, which included, among other things, the Supplemental Disclosures (the "Definitive Proxy Statement").

On July 29, 2015, a special meeting of stockholders of Square 1 was held, at which the Transaction was approved by affirmative vote of a majority of the outstanding shares of Square 1 Class A common stock entitled to vote at the special meeting.

Pursuant to the MOU, Plaintiff, through counsel, took certain document and deposition discovery related to the consideration of the Agreement by the Square 1 board of directors. Defendants produced certain internal, non-public documents to Plaintiff, and Plaintiff took sworn deposition testimony from Douglas Bowers (the CEO and President of Square 1 and a member of the Square 1 Board) on September 16, 2015 and from Emmett Daly (of Sandler O'Neill Partners, L.P. ("Sandler O'Neill"), financial advisor to Square 1 in connection with the Transaction) on September 17, 2015.

On October 6, 2015, the Transaction was consummated.

After settlement negotiations that were extensive and adversarial, Plaintiff and Defendants unanimously agreed to enter into a Settlement Agreement. The Settlement ensured that Square 1 shareholders were given the material information necessary for them to make fully-

informed decisions about whether to vote for, or against the Transaction. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) (internal citations omitted) (observing that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [shareholder's action] . . ." and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute").

## THE SETTLEMENT

After reaching an agreement in principle on the substantive terms of the Settlement, the Parties adopted the MOU that was subject to the filing of the Supplemental Disclosures.

The Supplemental Disclosures were set forth in a Schedule 14A Definitive Proxy Statement filed by Square 1 with the SEC on June 23, 2015 and included additional material information that shareholders could rely upon when deciding whether to vote their shares in favor of the Transaction.[3] The Supplemental Disclosures provided material information to Square 1 shareholders regarding, in part, the following:

- With respect to the *Comparable Companies Analysis*, the criteria Sandler O'Neill used to select the comparable companies and the metrics and key data observed by Sandler O'Neill in this analysis;
- With respect to Sandler O'Neill's *Analysis of Selected Merger Transactions*, the metrics and key data observed by Sandler O'Neill in this analysis; and

[3] A redline showing the Supplemental Disclosures is included as Exhibit A to the Memorandum of Understanding, filed as Exhibit 2 to the Declaration of Shannon L. Hopkins in Support of Plaintiff's Unopposed Motion for Preliminary Approval, Preliminary Certification of the Settlement Class, and Approval of Notice to the Settlement Class, filed on December 24, 2015 (ECF No. 13-2).

- With respect to the *Background of the Merger* section, the Supplemental Disclosures included: (i) the basis for the decision to establish a M&A Committee and the details of the selection process; (ii) the basis for the decision not to solicit interest from parties other than PacWest; and (iii) the basis for the decision by the Square 1 Board not to enter into a symmetrical "collar" structure.

In exchange for receiving these Supplemental Disclosures, Plaintiff, on behalf of the Settlement Class, agreed to release the claims asserted against Defendants.

As of the filing of this Motion, Plaintiff is not aware of a single objection to the proposed Settlement or counsel's request for attorneys' fees and reimbursement of expenses, demonstrating the Class' support for the Settlement.

Plaintiff submits that the proposed Settlement is fair, reasonable, and adequate and in the best interests of all shareholders, meets all indicia of fairness and merits the Court's preliminary approval. Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the Order and Final Judgment (the "Final Order") as submitted.

## ARGUMENT

## I. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff respectfully requests that a Class be certified for settlement purposes pursuant to Fed. R. Civ. P. Rules 23(b)(1) and (b)(2). For the reasons set forth below, certification under these Rules is appropriate because Square 1 could be subject to differing standards of conduct if claims of individual class members were prosecuted on an individual basis, and because the relief sought in the Settlement is exclusively injunctive and declaratory.

### A. Standard of Review

"Litigants should be encouraged to determine their respective rights between themselves

and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *12-13 (S.D. W. Va. Dec. 19, 2008) ("The essence of any settlement is compromise. A settlement compromising conflicting positions in class action litigation serves the public interest.").

In certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Undiluted attention to the remaining requirements is of vital importance. *Id.*

### B. Class Certification Should Be Granted For Settlement Purposes Under Rule 23

Class certification under Rule 23 has two primary components. First, the party seeking class certification must establish the four core requirements of Rule 23(a): (1) numerosity ("[a] class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequate representation (representatives "will fairly and adequately protect the interests of the class"). *See In re A.H. Robins Co., Inc.*, 880 F.2d 709, 727 (4th Cir. 1989); *see also Amchem*, 521 U.S. at 613.

Second, a Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *In re A.H. Robins*, 880 F.2d at 727–28. In the present case, Plaintiff seeks certification under Rule 23(b)(1) and (2). Rule 23(b)(1) allows certification of a class if: (A) prosecuting separate actions would create a risk of inconsistent judgments which

would establish incompatible standards of conduct for the party opposing the class; or (B) if adjudicating the claims of individual class members would, as a practical matter, be dispositive of the interests of non-party class members or impede their abilities to protect their own interests.

Rule 23(b)(1) defines two types of class actions designed to prevent prejudice to parties arising from multiple potential suits involving the same subject matter. The difference between the two subsections is that Rule 23(b)(1)(A) focuses on possible prejudice to the defendants, while Rule 23(b)(1)(B) focuses on possible prejudice to the plaintiff class members. *See DiFelice v. US Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole. Rule 23(b)(2) classes are limited to class actions seeking primarily injunctive or declaratory relief. *See Zimmerman v. Bell*, 800 F.2d 386, 389–90 (4th Cir. 1986).

As discussed below, this Action meets all of the criteria for class certification.

### C. The Proposed Class Here Satisfies the Criteria of Rule 23(a)

#### 1. Numerosity

To meet the numerosity requirement, the class representative must first demonstrate that the purported class is so large that the joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Montague v. Dixie Nat'l Life Ins. Co.*, No. 3:09-687-JFA, 2010 U.S. Dist. LEXIS 111362, at *6-7 (D.S.C. Oct. 19, 2010). "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978).

As of February 27, 2015, there were approximately 29.57 million shares of Square 1 common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country. Courts have found as few as eighteen members satisfies the numerosity requirement. *See, e.g., Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23 (a)(1)'s numerosity requirement"); *Cent. Wesleyan Coll. v. W.R. Grace & Co*., 6 F.3d 177, 183 (4th Cir. 1993) ("480 potential class members would easily satisfy the numerosity requirement."); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (suggesting that a "class as large as 74 persons is well within the range appropriate for class certification").

Thus, the numerosity requirement is met.

**2. Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Fourth Circuit has stated that a "common question is one that can be resolved for each class member in a single hearing" and that a "question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." *City of Ann Arbor*, 270 F.R.D. at 251 (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006)).

Here, Plaintiff is asserting claims on behalf of all Square 1 shareholders. Defendants acted on a common basis with respect to all shareholders. What proved to be the ultimate issue in the case was whether Square 1 gave adequate disclosure of information needed by shareholders to cast an informed vote in connection with the Transaction. Defendants gave (or did not give) the same disclosures to all shareholders. Thus, whether the disclosures which were given were adequate was a common issue for all shareholders.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality requires that the claims of the named class representative be typical of those of the class; a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *City of Ann Arbor*, 270 F.R.D. at 251 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (internal quotation marks omitted)). Additionally, "[t]he typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 251 (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)).

Here, Plaintiff's circumstances are exactly the same as all other Square 1 shareholders, and the legal theory upon which their claims are based are exactly the same as that of other Square 1 shareholders. Indeed, the reason that Plaintiff's claims are typical is the same reason why there are common issues. Defendants acted or failed to act in the same manner identically with respect to all shareholders, namely they failed to provide adequate disclosures regarding the Transaction.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991). "This inquiry involves two issues: (i) 'whether plaintiffs have any interest antagonistic to the rest of the class;' and (ii) whether plaintiffs' counsel are 'qualified, experienced and generally able to conduct the proposed litigation.'" *Id.* at 329-330 (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718,

726 (11th Cir. 1987)). In addition, the plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard*, 155 F.3d at 338 (internal quotation marks omitted).

Here, Plaintiff received the same disclosures and consideration under the Transaction as all other Square 1 shareholders. In addition, Plaintiff would have to prove the same facts as any other shareholder to establish his claims, and therefore, has precisely the same interests and incentives as any other Square 1 shareholder to pursue claims related to the Transaction. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 313 (3d Cir. 1998):

> As discussed, the crux of this class action is the allegation that Prudential engaged in a scheme to defraud policyholders by means of company-wide deceptive sales practices. The named parties, like the members of the class, would need to establish this scheme in order to succeed on any of the claims in the Second Amended Consolidated Complaint. Even those class members with 'other' claims share the common task of demonstrating the existence and implementation of this scheme. Consequently, we believe the proposed class satisfies the adequacy of representation requirement of Rule 23(a).

Moreover, the Class is represented by law firms with national reputations in the class action field in the context of mergers and acquisitions such as the impugned transaction between Square 1 and PacWest. Levi & Korsinsky has extensive experience, is highly competent in prosecuting lawsuits similar to the pending actions, and has provided highly effective case management and guidance as lead counsel in numerous shareholder class actions and other complex litigation throughout the United States. In this capacity, Levi & Korsinsky has obtained significant monetary and therapeutic recoveries, including millions of dollars in increased merger consideration for public shareholders; and additional disclosure of significant material information so that shareholders could intelligently gauge the fairness of the terms of proposed transactions and other types of therapeutic relief designed to increase competitive bids and protect shareholder value. For instance, in *In re Bluegreen Corp. S'holder Litig.*, C.A. No.

502011CA01811 (Cir. Ct. Palm Beach Cty., FL), Levi & Korsinsky served as Co-Lead counsel for a class of shareholders, ultimately recovering a common fund of $36.5 million for minority shareholders in connection with a management-led buyout of a formerly publicly-traded company. Similarly, Schiller & Schiller has extensive experience representing injured parties in the state and federal courts of North Carolina, both at the trial and appellate level.

This proven track record demonstrates Plaintiff's Counsel's ability to prosecute this class action with competence and vigor. *See City of Ann Arbor*, 270 F.R.D. at 253. Thus the adequacy requirement is satisfied.

### D. The Proposed Class Satisfies the Criteria of Rule 23(b)

Here, Plaintiff seeks to certify a Class pursuant to Rules 23(b)(1) and (b)(2). Rule 23(b)(1) allows for certification of a class if:

> [the] prosecut[ion of] separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the… adjudications or would substantially impair or impede their ability to protect their interests.

Rule 23(b)(2) allows for certification of a class if "the party opposing the class has acted or refused to act on ground that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The plaintiff must make two showings in order to proceed under Rule 23(b)(2). First, the complaint must seek relief which is predominantly injunctive or declaratory. Second, the plaintiff must demonstrate that defendants acted or refused to act on grounds generally applicable to the class, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Both Rule 23(b)(1) and 23(b)(2) classes are mandatory classes, *i.e.*, no opt-outs are allowed. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 472 n.5 (E.D.N.C. 2010) ("If the court were to certify plaintiffs' class action under Rule 23(b)(1), potential plaintiffs would not be able to opt out of the class action because membership is mandatory under Rule 23(b)(1)…. Only if the court were to certify plaintiffs' class action under the subdivision (b)(3) would there truly be an opt-in/opt-out situation.") (citing Fed. R. Civ. P. 23(c)(2), (3); *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994); 7AA *Charles Ann Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure*: Civil § 1784.1 (3d ed. 2005)).

Here, Plaintiff has satisfied the criteria of both Rule 23(b)(1) and 23(b)(2). Courts have repeatedly held that actions challenging the exercise of fiduciary duties in corporate transactions, like the Transaction at issue here, are properly certifiable under Rules 23(b)(1) and (b)(2) because separate actions would create a risk of inconsistent adjudications for members of the class as well as the parties. *See, e.g., Tatum v. R.J. Reynolds Tobacco Co.,* 254 F.R.D. 59 (M.D.N.C. 2008) (certifying an action concerning mismanagement of a retirement plan and alleged breach of fiduciary duty as a class claim pursuant to Rule 23(b)(1)(B)); *Knight v. Lavine*, No. 1:12-cv-611, 2013 U.S. Dist. LEXIS 14855, at *12 (E.D. Va. Feb. 4, 2013) (certifying a class under Rule 23(b)(2) in a merger-related action and noting that the key to Rule 23(b)(2) certification is the indivisible nature of the remedy warranted such that it would apply to all of the class members or none of them) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011)); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006) ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance

for treatment under Rule 23(b)(1).”); *In re Celera Corp. S'holder Litig.*, 59 A.3d 418 (Del. 2012) (approving settlement of merger-related fiduciary claims); *Turner v. Bernstein*, 768 A.2d 24, 31 (Del. Ch. 2000) (same).

The Class satisfies Rule 23(b)(1)(A) because there is a significant risk that if individual cases were brought on behalf of Square 1 shareholders, Square 1 would have to make different disclosures or the disclosures of the same facts worded differently, or have to make no additional disclosures at all. This could expose Square 1 to different standards of conduct with respect to a group to which Square 1 has an obligation under applicable securities laws and regulations to treat uniformly. The Class is also certifiable under Rule 23(b)(2) because the settlement relief is exclusively injunctive or declaratory. The Settlement, which consisted of the Supplemental Disclosures, ensured that shareholders would have all material information necessary in order to make an informed decision regarding the Transaction. Further, Square 1 acted or refused to act on grounds generally applicable to the Class. Square 1 was acting in a uniform manner with respect to providing information to shareholders.

## II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, MERITING THIS COURT'S APPROVAL

The proposed Settlement is fair, reasonable and adequate in accordance with Rule 23. Plaintiff's counsel respectfully submits that it obtained all of the relief which could have reasonably been obtained in litigation for the Class. For the reasons set forth below, the Settlement should be approved.

The Fourth Circuit applies a two-part test to determine whether a proposed settlement conforms to the requirements of the Federal Rules, particularly Rule 23(e)(2), by considering: (A) “fairness,” which focuses on whether the proposed settlement was negotiated at arm's length; and (B) “adequacy,” which focuses on whether the consideration provided to the class

members is sufficient. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). Additionally, "[t]here is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27.

### A. Fairness Determination

In assessing the fairness of a proposed settlement, the court must consider the following four factors: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. *See Jiffy Lube*, 927 F.2d at 159. Plaintiff submits that each of these factors supports approval of the Settlement.

#### 1. The Posture of the Case and the Extent of Discovery

The first *Jiffy Lube* factor directs the Court to evaluate essentially how far the case has come from its inception. *See, e.g., Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *8. This factor assists the court in evaluating whether the plaintiff and his/her counsel have sufficiently developed the case such that they can appreciate the merits of the claims. *Id.* "There is, however, no minimum or definitive amount of discovery that must be undertaken." *Id.* at *8-9 (citing *Jiffy Lube*, 927 F.2d at 159). Similarly, the second *Jiffy Lube* factor -- evaluating the extent of discovery that has been conducted -- enables the Court to ensure that the case is ripe enough or well-enough developed for class counsel and plaintiffs alike to appreciate the full extent or landscape of their case when agreeing to enter into a settlement. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).

In *Jiffy Lube*, for example, the Fourth Circuit noted that the parties had reached a settlement at a very early stage in the litigation and prior to any formal discovery. 927 F.2d at

159. However, the Fourth Circuit was convinced that the district court had not erred in approving the fairness of a proposed settlement based on various documents that the plaintiffs had filed and evidence that had been obtained through informal discovery, all of which supplied sufficient undisputed facts to support the extent of "the difficulties plaintiffs would have in proving fraudulent intent under both federal and state securities laws." *Id.*

In this case, the discovery taken was sufficiently comprehensive to support a mutual settlement of the case. Defendants produced certain internal, non-public documents to Plaintiff, including minutes from the relevant Board meetings discussing and approving the Transaction and analyses from Sandler O'Neill provided to the Board. *See* Stipulation at ¶ M. Plaintiff also took sworn deposition testimony from Douglas Bowers (the CEO and President of Square 1 and a member of the Square 1 Board of Directors) on September 16, 2015 and from Emmett Daly of Sandler O'Neill on September 17, 2015. *Id.* Moreover, Plaintiff retained a well-known valuation expert to assist in evaluating his damages claims.

Thus, despite the early settlement, Plaintiff's Counsel respectfully submits that the substantial discovery undertaken indicates Plaintiff's appreciation for the merits of the particular claims asserted. *See Jiffy Lube*, 927 F.2d at 159 (concluding that the district court did not err in approving the proposed settlement even though it was reached early in the litigation before any formal discovery had occurred).

### 2. The Circumstances Surrounding the Negotiations

The third *Jiffy Lube* "fairness" factor requires the Court to evaluate the conditions and circumstances surrounding the settlement negotiations between Proposed Lead Counsel and Defendants. *See In re Mills Corp.*, 265 F.R.D. at 255. The objective of this factor is to ensure that "counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case." *Id.* (internal quotation marks

omitted). In fact, "[a]bsent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *9-10 (citing *Newberg on Class Actions* § 11.28 at 1159 (3d ed. 1992)); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) (same).

Here, the Settlement was the product of arm's length negotiations between Proposed Lead Counsel and defense counsel. *See* Stipulation at ¶ J. The parties' negotiations regarding Plaintiff's Counsel's Fee and Expense Award occurred after any agreement of the substantive terms of the Settlement. In this case, and absent evidence to the contrary, Plaintiff's counsel respectfully submits that the record supports a finding that the Settlement negotiations were the product of arm's length negotiations. *See In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619, at *6-7 (E.D.N.C. June 11, 2010) ("There is no evidence to the contrary, and the docket supports a finding of arms-length negotiations as there have been numerous filings on contested matters. Therefore, the Court is satisfied that the negotiations were conducted such that each side actively advocated its own position.").

**3. Proposed Lead Counsel Has Extensive Experience in the Area of Securities Class Action Litigation**

The final *Jiffy Lube* "fairness" factor looks to the experience of Plaintiff's Counsel in this particular field of law. *See In re Mills Corp.*, 265 F.R.D. at 255. This District has recognized that when counsel is comprised of "nationally recognized members of the securities litigation bar," it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement. *Id.* (quoting *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001)).

In this case, Plaintiff and the class are represented by Levi & Korsinsky, a firm that has

litigated extensively in the area of shareholder class and derivative actions and is well-reputed for pursuing its cases to a successful resolution through trial or settlement. *See* Exhibit B to the Declaration of Shannon L. Hopkins in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Certification of the Settlement Class, and an Award of Attorney's Fees and Expenses ("Hopkins Decl."), filed concomitantly herewith. Based on its knowledge of the facts of this case and its extensive litigation experience in the same and related areas, Levi & Korsinsky has arrived at a well-considered judgment that the Settlement is in the best interests of Square 1 shareholders and is an excellent achievement and appropriate under all the circumstances. Accordingly, the Settlement should receive this Court's final approval.

**B. Adequacy Determination**

In turn, the factors to be considered in assessing a settlement's "adequacy" are: (1) the relative strength of the plaintiff's case on the merits; (2) existence of any proof-related difficulties of proof or presence of strong defenses defendants could assert and which the plaintiff is likely to encounter if the case goes to trial; (3) the anticipated duration and cost of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. Based upon the following analysis of the factors, Plaintiff respectfully submits that the Settlement is also adequate.

**1. The Settlement is "Adequate" Under the First Three *Jiffy Lube* Factors.**

Securities cases, like the present one, are "notably difficult and notoriously uncertain." *In re Mills*, 265 F.R.D. at 255. The first three *Jiffy Lube* factors address the "adequacy" of a settlement compelling a reviewing court to undertake a balancing inquiry involving how much the class gives up or sacrifices in settling a potentially strong case in light of how the class gains garnered in avoiding the uncertainty of a potentially difficult case. *See id.* at 255-56; *see In re*

*Red Hat*, 2010 U.S. Dist. LEXIS 68619, at *9 ("The first three factors relate to the [p]laintiffs' consideration of the strengths and weaknesses of their case.").

These factors undoubtedly weigh in favor of the Settlement. In the merger context, corporate directors have a duty to exercise informed business judgment. *See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, 501 A.2d 1239, 1247 (Del. Ch. 1985) ("Directors faced with the decision to accept or reject a merger agreement must exercise informed business judgment.").[4] Moreover, directors are required to "'disclose fully and fairly all material information within the board's control when it seeks shareholder action.'" *Wayne Cnty. Emps.' Ret. Sys. v. Corti*, 954 A.2d 319, 330 (Del. Ch. 2008) (quoting *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)). At the time the complaint was filed, Plaintiff argued that Square 1's directors breached their fiduciary duties to the public shareholders by agreeing to the terms of the Transaction, namely the merger was being effect at an unfair price and that Plaintiff and Square 1's shareholders would be asked to vote on the Transaction without the benefit of an honest and fair sales process or full disclosure of all material information. *See, e.g., Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 43 (Del. 1994) (when a company is up for sale, directors are obligated "to seek the transaction offering the best value reasonably available to stockholders"). However, as a result of further investigation and discovery prior to entering into the MOU, and additional discovery in the form of depositions taken before entering the Stipulation, Plaintiff and his counsel concluded that, except for the disclosure claims (which have been subsequently resolved, as discussed above), Plaintiff's chances of success were too

---

[4] Plaintiff cites Delaware law as it serves as a sound basis when there is no applicable precedent under Fourth Circuit case law concerning shareholder claims relating to merger challenges that are predicated upon a resolution of complex corporate issues. *See, e.g., Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. RDB-05-841, 2005 U.S. Dist. LEXIS 26837, at *11 (D. Md. Nov. 3, 2005).

remote to warrant further litigation.

**a. Disclosure Claims**

Where there are material deficiencies in disclosure documents seeking shareholder approval, courts have held that the preferred remedy is disclosure before the merger. *See, e.g.*, *Gilmartin v. Adobe Res. Corp.*, No. 12467, 1992 Del. Ch. LEXIS 80, at *43 (Del. Ch. April 6, 1992) (granting plaintiff's motion for a preliminary injunction and holding "[t]he right to cast an informed vote is specific, and its proper vindication in this case requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages"); *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ("our cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected. An injunctive remedy of that nature specifically vindicates the stockholder right at issue – the right to receive fair disclosure of the material facts necessary to cast a fully informed vote – in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable.").

Here, the shareholders received previously undisclosed material information that was not included in Defendant's Preliminary Proxy Statements. It was not until after the complaint was filed and Plaintiff made a demand that Square 1 issued the Supplemental Disclosures in a portion of the definitive Form S-4/A. This timely action regarding the Supplemental Disclosures ensured that the Square 1 shareholders received this information in order to make an informed vote regarding the Transaction.

By giving Square 1's shareholders the opportunity to consider the Supplemental Disclosures, the Settlement provided the Class with a significant benefit. *See In re Netsmart Tech., Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007) (noting the Court's preference for supplemental disclosure that provide shareholders with full information in advance of the vote

because such a remedy "gives stockholders the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and remedial decisions based on their own economic self-interest"); *see also In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 9, 1998) ("Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform stockholders' decision making process.").

For the foregoing reasons, Plaintiff respectfully submits that the Settlement is "adequate" under the first three *Jiffy Lube* factors.

**2. There Are No Solvency Issues**

There is no basis for Plaintiff's Counsel to assert that the Defendants cannot afford to pay some amount of damages.

**3. The Lack of Opposition to the Settlement**

The final *Jiffy Lube* "adequacy" factor looks to the reaction of the class to the proposed settlement and "[t]he attitude of the members of the [c]lass, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court." *In re Mills*, 265 F.R.D. at 257 (internal quotation marks omitted).

Pursuant to the Scheduling Order, Defendants mailed the notice of the Settlement to the proposed Class. The notice was deemed fair and reasonable, constituted the best notice practicable, and fully satisfied the requirements of due process and applicable law. To date, there have been no objections to any aspect of the Settlement. A lack of objections is generally indicative of the shareholder approval of a proposed class settlement. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections

are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal quotation marks omitted). This lack of objections to the Settlement by the proposed Class members should be taken into account and construed favorably by the Court.

This implicit support from the members of the Class is deserving of substantial weight by the Court. *See, e.g., In re Mills*, 265 F.R.D. at 257-258 (finding "a great deal of confidence in the settlements adequacy" after notices were mailed to over 128,000 potential class members, and not a single putative class member objected); *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *16-17 ("No class member has objected to the proposed settlement, and only three have opted out… The lack of objections and opt-out requests are important factors contributing to a conclusion that the settlement is fair and reasonable."); *In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 905-906 (E.D. Va. 2001) ("[I]t is quite significant here … no class member filed an objection… Because 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy,' the lack here of any objections … strongly compel a finding of adequacy."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("[T]he class response supports settlement -- not a single class member has objected to the Settlement Agreement and only a small number have opted-out.").

Based on the foregoing, Plaintiff's Counsel respectfully submits that the Settlement is not only fair, but also adequate under the *Jiffy Lube* factors, and therefore this court should find the Settlement fair, reasonable, and adequate in accordance with Rule 23(e).

## III. PLAINTIFF'S COUNSEL'S REQUEST FOR THE FEE AND EXPENSE AWARD SHOULD BE GRANTED

For prosecuting this Action on a fully contingent basis and obtaining substantial benefits for the Class, Plaintiff's counsel seeks an award of attorneys' fees and expenses in the amount of $300,000. Defendants do not oppose this request. As discussed below, the Fee and Expense

Award is fair and reasonable in light of the very substantial benefits Plaintiff's Counsel achieved for the Class through the Settlement.

### A. The Requested Fee is Reasonable Under the Lodestar Analysis

Where, as here, there is no "common fund" out of which attorneys' fees can be awarded, the lodestar method is the appropriate method for calculating fees. *See Teague v. Bakker*, 213 F. Supp. 2d 571, 582 (W.D.N.C. 2002) ("The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.") (internal quotation marks omitted); *see also Rucker v. McNair*, No. 5:95-CV-1054-BO(2), 1997 U.S. Dist. LEXIS 22036, at *9-10 (E.D.N.C. Dec. 7, 1997) (applying the lodestar method of calculation in a "common benefit" case). In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Reasonableness is the key in the analysis, and the Fourth Circuit has adopted twelve factors to guide the Court in determining what are "reasonable" hours and rates:

> (1) time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*See Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226, n.28 (4th Cir. 1978) (where the court adopted the factors established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Application of the *Johnson* factors confirms the reasonableness of the requested Fee and Expense Award.

### 1. The Time and Labor Expended, Awards in Similar Cases, and Customary Fee For Similar Work

Plaintiff's counsel have expended substantial time and resources to diligently prosecute this Action. Specifically, the lodestar of Plaintiff's Counsel is broken down as follows:

| FIRM | TOTAL HOURS | EXPENSES | LODESTAR | LODESTAR PLUS EXPENSES |
|---|---|---|---|---|
| Levi & Korsinsky LLP | 261.25 | $8,741.61 | $151,905.00 | $160,646.61 |
| Schiller & Schiller PLLC | 12.10 | $400.00 | $3,025.00 | $3,425.00 |
| **TOTAL** | 273.35 | $9,141.61 | $154,930.00 | $164,071.61 |

In calculating the lodestar amount, Plaintiff's Counsel have applied their current hourly rates, which numerous courts have recognized is appropriate. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (in lodestar analysis, "[f]ull compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor"). Plaintiff's Counsel's hourly rates are also reasonable in its industry.

In this case, after deducting total expenses of $9,141.61, the Fee and Expense Award requested is approximately 1.87 times Plaintiff's Counsel's overall lodestar. In addition, the total Fee and Expense Award requested represents an average hourly rate of approximately $1,064.00

per hour based on the lodestar figures above.[5] These amounts are comparable to, or below, those awarded in other similar cases, and are reasonable in light of the benefit provided to the Class through the Supplemental Disclosures.[6] *Compare Globis Capital Partners v. Safenet*, No. 2772-VCS, 2007 Del. Ch. LEXIS 237, at *8 (Del. Ch. Dec. 20, 2007) (awarding fees of $1,500 per hour, for a total award of $1.2 million, in a disclosure-only settlement); *Franklin Balance Sheet Inv. Fund v. Crowley*, No. 888-VCP, 2007 Del. Ch. LEXIS 133, at *46 (Del. Ch. Aug. 30, 2007) ($4.2 million fee represented an hourly rate of $4,023 per hour); *In re NCS Healthcare, Inc. S'holders Litig.*, No. 19786, 2003 Del. Ch. LEXIS 56, at *12 (Del. Ch. May 28, 2003) ($10 million fee represented an hourly rate of approximately $3,030 per hour); *Dragon v. Perelman*, C.A. No. 15101 (Del. Ch. Aug. 29, 1997) Tr. at 48, 51 ($3,000,000 fee represented an hourly rate of approximately $3,500); *In re Digex, Inc. S'holder Litig.*, No. 18336 (Del. Ch. Apr. 6, 2001) Tr. at 141-47 (lodestar of $1.4 million awarded fee of $12.3 million, representing lodestar multiplier of 9); *In re Lin Broadcasting Corp. S'holders Litig.*, No. 14039, 1995 Del. Ch. LEXIS 167, at *5 (Del. Ch. Sept. 15, 1995) ($9 million fee represented an hourly rate of more than $3,800); *La. Mun. Police Emps.' Ret. Sys. v. Crawford*, No. 2635 (Del. Ch. June 8, 2007) (order approving fees of $20 million representing a lodestar multiplier of 6.5).

While every case is unique and must be judged on its own merits, the requested $300,000 Fee and Expense Award is well within the range of similar merger cases where the settlement consisted mainly, if not solely, of supplemental disclosures in company filings. Within the

---

[5] The lodestar and expense details for both Levi & Korsinsky and Schiller & Schiller can be found in the Hopkins Decl. and the time and expense report attached thereto as Exhibit 2, respectively.

[6] Plaintiff cites Delaware law as it supplies a sound basis when there is a paucity or absence of relevant precedent, such as under Fourth Circuit case law, concerning shareholder claims relating to merger challenges.

Fourth Circuit, the Western District of Virginia recently approved attorneys' fees of $325,000 for a disclosure-only settlement. *Crescente v. StellarOne Corporation*, C.A. 3:13-cv-00021 (W.D. Va. May 19, 2014) (Hopkins Decl, Ex. 3). Other recent fee awards in Delaware support the agreed-upon Fee and Expense Award requested here. *See County of York Employees Retirement Plan v. Merrill Lynch,* C.A. No. 4066-VCN (Del. Ch. Aug. 31, 2009) ($950,000 for disclosure-only settlement) (Hopkins Decl., Ex. 4) (Order and Final Judgment); *Henkel v. Battista*, No. 3419-VCN, 2008 Del. Ch. LEXIS 292, at *8 (Del. Ch. Dec. 16, 2008) (awarding $1.1 million in fees and expenses for additional disclosures); *In re The Trizetto Group, Inc. S'holders Litig.*, No. 3694-VCN (Del. Ch. Dec. 4, 2008) ($950,000 for disclosures and proportional voting provision agreement) (Hopkins Decl., Ex. 5) (Final Order and Judgment); *Virgin Islands Gov't Employees' Ret. Sys. v. Alvarez*, No. 3976-VCS, 2008 Del. Ch. LEXIS 291, at *4 (Del. Ch. Dec. 2, 2008) ($1.25 million for disclosure-only settlement); *In re Staples, Inc. S'holders Litig*, Cons. No. 18784 (Del. Ch. Aug. 16, 2001) ($2.75 million for disclosure-only settlement) (Hopkins Decl., Ex. 6).

**2. The Novelty and Difficulty of Questions Raised By the Litigation**

This Action involves complex factual and legal issues. As stated above, well before the Parties reached a settlement, Plaintiff's Counsel, assisted by their financial experts, conducted an extensive factual investigation, including reviewing Square 1's SEC filings, press releases and other public information, as well as nonpublic financial information provided by Defendants. As a result of the speed of merger deals - a feature that is intrinsic to such transactions – Plaintiff's Counsel was required to complete all of the investigations of a legal, factual and financial nature in an extremely condensed time frame.

In addition to the factual record researched, reviewed and analyzed by Plaintiff's Counsel, counsel also researched, reviewed and analyzed the legal issues presented by the

merger-related claims and the Individual Defendants' potential defenses and their fiduciary duties owed to Square 1's public shareholders under Delaware law in the merger context. All of this review was necessary to assess the scope for continuing litigation. After a thorough review, Plaintiff's counsel concluded that there was minimal potential for obtaining additional remedies and damages once the required supplemental disclosures were made by Square 1. Accordingly, based on their investigation, discovery efforts and analysis of applicable legal principles, Plaintiff's Counsel concluded that the Supplemental Disclosures provided ample consideration for the parties to settle and release the claims in this Action, and provided an excellent result given the litigation risk in such complex merger-related litigation.

### 3. The Skill Required to Perform the Legal Services

It took considerable skill to achieve the Settlement. To successfully pursue the Action, Plaintiff's Counsel had to possess expertise in Delaware state law governing the fiduciary duties of officers and directors, as well as the knowledge to distill and analyze facts giving rise to Plaintiff's claims from voluminous documents. Plaintiff's Counsel assembled a team that possessed the necessary expertise. These combined talents allowed counsel to plead claims and theories of liability to pursue the Action, obtain the information they needed to analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table, all to the benefit of Square 1 shareholders. Plaintiff's Counsel's skill and expertise informed shareholders of previously undisclosed material information all of which permitted Square 1's shareholders to properly exercise their investment discretion.

### 4. The Opportunity Costs Due to Acceptance of the Case

There can be no doubt at all that Plaintiff's Counsel was precluded from other employment due to this litigation. As set forth above, Plaintiff's Counsel collectively expended approximately 273 hours litigating this matter, which time could have been spent on other

matters involving less or no risk.

### 5. The Attorney's Expectation At the Out-Set of the Litigation and the "Undesirability" of the Action

Even though Plaintiff believed his claims were supported by both fact and law at the outset of the litigation, there was substantial risk that Plaintiff would not prevail, and that Plaintiff's counsel – who accepted this case on a ***contingent fee basis*** – would not recover their expenses or the value of their time. Courts recognize that where, as here, counsel's compensation is contingent on recovery, a premium over counsel's hourly rate may be appropriate. *See Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (Del. 1966); *Seinfeld v. Coker*, 847 A.2d 330, 333-334 (Del. Ch. 2000); *Franklin Balance*, 2007 Del. Ch. LEXIS 133, at *38-39 ("Fee awards should encourage future meritorious lawsuits by compensating the plaintiffs' attorneys for their lost opportunity cost (typically their hourly rate), the risks associated with the litigation, and premium.") (footnotes omitted); *In re Vitalink Commc'ns Corp. S'holders Litig.*, No. 12085, 1991 Del. Ch. LEXIS 195, at *51 (Del. Ch. Nov. 8, 1991) ("[i]n all fairness, the contingent nature of [counsel's] fee agreement demands a higher fee for [counsel's] work"); *In re Plains Res. Inc. S'holders Litig.*, No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("[T]he plaintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

In *Globis Capital Partners v. Safenet*, No. 2772-VCS (Del. Ch. Dec. 20, 2007) (Hopkins Decl., Ex. 7) (Tr. of Settlement Hearing), the court awarded a fee of $1.2 million, which equated to approximately $1,500 per hour, in a disclosure-only settlement, reasoning: "you need to reward people who took real risk and hit a home run … [W]hen you look at this particular situation, it's clear that the plaintiffs really did achieve substantial disclosure." Tr. at 34, 49.

Here, as supported also by the above cases, Plaintiff's counsel undertook a high-risk representation on a completely contingent basis, facing the possibility of recovering nothing for their efforts.

**6. Time Limitation Imposed by Client or Circumstances**

Plaintiff's Counsel submits that the prompt settlement of the Action with excellent Supplemental Disclosures clearly benefits the Square 1 shareholders. With the merger vote scheduled for July 29, 2015, to be followed by the consummation of the transaction, Plaintiff's Counsel was under tremendous pressure to ensure all Square 1 shareholders were equipped with all material information necessary to make a fully informed decision. This accelerated process is unique to the merger-related litigation context, and Plaintiff's Counsel respectfully submits that the Settlement provided an excellent result given the extreme time pressures.

**7. The Results Obtained**

The Settlement, while "nonpecuniary" in nature, facilitated communication and informed Square 1 shareholders of previously undisclosed material information permitting Square 1 shareholders to exercise their financial discretion in an informed manner. Plaintiff's Counsel's efforts resulted in securing significant, material disclosures for Class members concerning the Transaction. Without the benefits of these disclosures, Plaintiff's Counsel believes that the Square 1's common stockholders would have been compelled to vote on an uninformed basis, or retain their shares and risk losing a potentially beneficial opportunity.

Under the "common benefit" doctrine, an award of fees is permitted to a successful plaintiff whose action results in a substantial benefit to others, regardless of the nature of the benefit. *Rucker*, 1997 U.S. Dist. LEXIS 22036, at *9-10 (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)). In common benefit cases, "a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees." *Tandycrafts, Inc. v. Initio*

*Partners*, 562 A.2d 1162, 1165 (Del. 1989); *In re The Topps Co. S'holders Litig.*, 924 A.2d 951, 962 (Del. Ch. 2007) ("Nor can stockholder-plaintiffs believe that their lawyers will not receive appropriate remuneration in this court for achieving an important benefit for the corporation or a class of stockholders."). Even where no common fund is created, Delaware courts acknowledge that attorneys' fees can be based on results that provide real and tangible – even if difficult to quantify – benefits to shareholders. Indeed, a non-quantifiable recovery can – and should – be the sole basis for the Fee and Expense Award. *Ryan v. Gifford*, No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *41 (Del. Ch. Jan. 2, 2009).[7]

In *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, the Second Circuit agreed with the district court's identification of "the facilitation of communication among shareholders and between shareholders and management as a ***substantial*** interest that was vindicated by plaintiffs' action." 54 F.3d 69, 72 (2d Cir. 1995) (emphasis added) ("In order to exercise the right of corporate suffrage, shareholders must be informed of important issues confronting the corporation."). "Accordingly, we hold that the promotion of corporate suffrage regarding a significant policy issue confers a ***substantial*** benefit regardless of the percentage of votes cast for or against the proposal at issue." *Id.* at 71-72 (emphasis added).

In this case, the Settlement disclosed the Supplemental Disclosures to shareholders prior to a vote on the Transaction, which offered material information allowing the shareholders to make a fully informed decision regarding whether to vote or not during the July 29, 2015

[7] When significant benefits follow the filing of the meritorious lawsuit, it is presumed that the lawsuit and counsel's services in prosecuting the case contributed to that benefit. *In re Infinity Broad. Corp. S'holders Litig*., 802 A.2d 285, 290 (Del. 2002). Here, as Defendants acknowledge, there is no serious question that Plaintiff's litigation efforts caused Square 1 to file the Supplemental Disclosures to fully inform the Square 1 shareholders on all material information surrounding the Transaction.

Transaction vote. In this context, the Delaware Chancery Court explained in *In re Netsmart*:

> Faced with the question of whether to accept cash now in exchange for forsaking an interest in Netsmart's future cash flows, Netsmart stockholders would obviously find it important to know what management and the company's financial advisor's best estimate of those future cash flows would be … Indeed, projections of this sort are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or (as already discussed) market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects.

924 A.2d at 203. Without such information, Square 1's shareholders would have been unable to make an informed decision regarding their vote. *See*, *e.g.*, *In re Emerging Commc'ns, Inc. S'holder Litig.*, No. 16415, 2004 Del. Ch. LEXIS 70, at *134 (Del. Ch. May 3, 2004) (finding projections "highly material" because knowledge of the projections "would have enabled the shareholders to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company."). Thus, the Supplemental Disclosures provided highly material information to Square 1's shareholders, enabling them to make a fully informed decision regarding their vote. The Settlement, therefore, while "nonpecuniary" in nature, provided a substantial benefit to the Class.

**8. The Experience, Reputation and Ability of the Attorneys**

Plaintiff's Counsel submits that it has extensive experience in the field of shareholder and other complex litigation and that they are highly regarded in this area of expertise. The Plaintiff's Counsel's qualifications are set forth in the firm resumes, attached to the Hopkins Declaration as Exhibits 1 and 2-A, and discussed above. *See* Argument *supra* § I.C.4.

The quality of opposing counsel is also relevant in assessing the quality of Plaintiff's Counsel's work. *See, e.g., In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976) (attorneys' fees justified where "plaintiffs [were] doing battle against several of the country's finest law firms."). Here, Defendants were represented by prestigious, experienced and highly

capable law firms with a national reputation for vigorous advocacy in the defense of complex shareholder class and derivative cases. The quality of the Defendants' counsels' efforts here was evident throughout the pendency of the Action. Despite these challenging factors, Plaintiff's Counsel has nonetheless obtained an excellent result for the Square 1 shareholders. Furthermore, Defendants' sophisticated and experienced counsel were certainly motivated to negotiate an attorney fee provision that was fair and in the best interests of their clients. Under these circumstances, the fact that they have agreed "not to oppose" the Fee and Expense Award, is a testamentary to its fairness, and thus, should be approved by the Court.

### 9. The Nature of the Professional Relationship With The Client

Plaintiff was a shareholder of Square 1, and the beneficial client in this case upon whom all benefits would flow is the entire Class of outstanding shareholders of Square 1 common stock. Plaintiff's counsel has a long history of representing shareholders in class action litigation of this sort and has developed a reputation for aggressively, efficiently and successfully prosecuting such actions on behalf of shareholders. *See* Firm resume attached as Exhibit 1 to Hopkins Decl.

In determining how shareholders have reacted to an attorney fee request, courts routinely consider both the number and quality of objections to the request. Here there are simply no shareholder objections to the proposed Settlement and Fee and Expense Award, although all shareholders have been given notice of and the opportunity to comment on these matters as part of the putative Settlement. *See* Stipulation, Ex. B, ¶ IX ("Right to Appear and Object"). Consequently, and in no small measure due to the substantial benefit Plaintiff's Counsel has garnered for Square 1 shareholders, the Class has deemed the Fee and Expense Award reasonable.

In sum, counsel respectfully submits that the request for the Fee and Expense Award of

$300,000 is reasonable and should be approved by this Court under the *Johnson* lodestar analysis.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Final Order and Judgment: (i) finally approving the proposed Settlement; (ii) certifying the proposed Settlement Class for settlement purposes; and (iii) approving attorneys' fees.

Dated: February 12, 2016

Respectfully submitted,

By: David G. Schiller

DAVID G. SCHILLER, (NCSB # 26713)
**SCHILLER & SCHILLER, P.L.L.C.**
304 East Jones Street
Raleigh, North Carolina 27601
Telephone: (919) 789-4677
Facsimile: (919) 375-3964

*- and -*

SHANNON L. HOPKINS
SEBASTIANO TORNATORE
**LEVI & KORSINSKY LLP**
733 Summer Street, Suite 304
Stamford, Connecticut 06901
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 12th day of February, 2016, the foregoing Memorandum of Law was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


<u>/s/ David G. Schiller</u>
DAVID G. SCHILLER, (NCSB # 26713)
**SCHILLER & SCHILLER, P.L.L.C.**
304 East Jones Street
Raleigh, North Carolina 27601
Telephone: (919) 789-4677
Facsimile: (919) 375-3964